## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **JENNIFER SCHUTZ,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.: |
| v. | : | |
| | : | |
| **TRISTAR PRODUCTS, INC.,** | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, **JENNIFER SCHUTZ** (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC**, hereby submits the following Complaint and Demand for Jury Trial against Defendant, **TRISTAR PRODUCTS, INC.** (hereinafter referred to as "Defendant Tristar" and "Defendant"), and alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1.      Defendant Tristar designs, manufactures, markets, imports, distributes and sells a wide-range of consumer products, including the subject "Power Pressure Cooker," which specifically includes the Tristar Pressure Cooker Model Number Y6D-36 (referred to hereafter as "pressure cooker(s)").

2.      Defendant Tristar touts that its pressure cookers are designed with several "Built-In Safety Devices," which purport to keep the consumer safe while using the pressure cooker. Such Safety Devices include a supposed "lid safety device." The "lid safety device" is intended to

1

prevent the unit from building pressure if the lid is not closed properly, as well as to prevent the lid from opening until all pressure is released.[1]

3.     Despite Defendant Tristar's claims of "safety," it designed, manufactured, marketed, imported, distributed and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to its consumers.

4.     Specifically, said defects manifest themselves when, despite Defendant Tristar's statements and "Safety Devices," the lid of the pressure cooker is removable with built-up pressure, heat and steam still inside the unit.  When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families and other bystanders. In this case, the lid was able to be removed while the pressure cooker retained pressure, causing Plaintiff serious and substantial bodily injuries and damages.

5.     Defendant Tristar knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

6.     As a direct and proximate result of Defendant Tristar's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

---

[1] Attached hereto and incorporated by reference as Exhibit A is the Power Quick Pot Digital Pressure Cooker Model No. Y6D-36 Owner's Manual. *See* pg. 6.

## PLAINTIFF JENNIFER SCHUTZ

7.      Plaintiff is a resident, citizen and is domiciled in the City of Las Vegas, County of Clark, State of Nevada. Plaintiff intends to remain in the C City of Las Vegas, County of Clark, State of Nevada indefinitely. Plaintiff therefore is a resident, citizen and is domiciled in the State of Nevada for purposes of diversity pursuant to 28 U.S.C. § 1332.

8.      On or about July 4, 2023, Plaintiff suffered serious and substantial injuries as the direct and proximate result of the pressure cooker's lid being able to be opened while the pressure cooker was still under pressure, during the normal, directed use of the pressure cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff.

9.      The incident occurred as a result of the failure of the pressure cooker's supposed "Built-In Safety Devices," which purport to keep the consumer safe while using the pressure cooker. In addition, the incident occurred as the result of Defendant Tristar's failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## DEFENDANT TRISTAR PRODUCTS, INC.

10.      Defendant Tristar designs, manufactures, markets, imports, distributes, and sells a variety of consumer products including, *inter alia*, pressure cookers, air fryers, sprinklers, hoses, and TV antennas.

11.      Defendant Tristar boasts that "[s]uperior innovation at affordable prices has enabled [them] to create #1 brands worldwide for more than 25 years" and that its products "solve everyday problems, helping to make life easier and more enjoyable for millions of consumers."[2]

12.      Prior to April 30, 2018, Defendant Tristar was known as "Tristar Products, Inc.," and was a Pennsylvania Corporation with its registered place of business at 2620 Westview Drive,

---

[2] https://www.tristarproductsinc.com/ (last accessed January 30, 2024).

Wyomissing, Berks County, Pennsylvania 19610, and its principal place of business located at 492 U.S. 46, Fairfield, New Jersey 07004.

13.    As of April 30, 2018, but prior to June 12, 2020, Defendant Tristar became "Tristar Innovative Products, Inc." and became a Florida Corporation with its registered place of business at 1293 North University Drive, #322, City of Coral Springs, Broward County, Florida 33071, and its principal place of business located at 492 U.S. 46, Fairfield, New Jersey 07004.

14.    As of June 12, 2020, Defendant Tristar changed its name back to "Tristar Products, Inc.," and changed its registered place of business to 2050 West County Highway 30a, #M1-109, Santa Rosa Beach, Walton County, Florida 32459.

15.    As of August 1, 2024, Defendant Tristar changed its registered place of business to 505 Maitland Avenue, Suite 1170 Altamonte Springs, FL 32701. Defendant herefore is a resident, citizen and is domiciled in the State of Florida for purposes of diversity pursuant to 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction as prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant Tristar is a resident and citizen of this district.

18.    Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has sufficient minimum contacts with the State of Florida and intentionally availed itself of the markets within Florida through the promotion, sale, marketing, and distribution of its products.

## FACTUAL BACKGROUND

19.    Defendant Tristar is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the pressure cookers at issue in this litigation.

20.    Defendant Tristar aggressively warrants, markets, advertises and sells its pressure cookers as "state of the art kitchen science," [3] allowing consumers to cook "wholesome, sit down, family-style meal[s] with just the push of a button;" [4] "in a fraction of the time" [5] as other kitchen appliances; and that "[t]here's no safer way to cook." [6]

21.    To further propagate its message, Defendant Tristar has, and continues to utilize numerous media outlets including, but not limited to, television infomercials, social media websites such as YouTube, third-party retailers, and professional chef endorsements. For example, the following can be found on Defendant Tristar's Power Pressure Cooker XL website[7] from "culinary expert" Eric Theiss, who is featured in many of Defendant Tristar's YouTube videos, as well as its television infomercial:

> "I have seriously never seen a cook tool so easy, so versatile, so affordable that anyone can make quality, delicious meals, perfectly cooked from the very first time! The Perfect Cooker is the one pot that does it all!"[8]

22.    In one YouTube video, Mr. Theiss states that "when your pressure cooker is up to pressure, the lid locks on. I couldn't get this lid open if I wanted to. There's no way you're gonna

---

[3]  https://www.youtube.com/watch?v=hN13IrMs_S4 at 1:34-1:35 (last accessed September 7, 2022).

[4] *Id*. at 9:04 - 9:08.

[5] *Id*. at 9:08 – 9:10.

[6] https://www.youtube.com/watch?v=kCESkfSSROk at 2:54 (last accessed September 7, 2022).

[7] http://www.powerpressurecooker.com/?gclid=Cj0KEQjw4cLKBRCZmNTvyovvj-4BEiQAl_sgQvo_7hhyOkL0DOfmJ0ZaW4G7brJ22YwsEEHAaros9zUaAqMb8P8HAQ (last accessed September 7, 2022).

[8] http://www.powerpressurecooker.com/about.php (last accessed September 7, 2022).

open it. So, it's loaded with Safety Devices, you guys. So, if you've never used a pressure cooker before, this is one of the safest ones you can get."[9] Later in the video, when Mr. Theiss is releasing the pressure from the pressure cooker, he states that "even if I wanted to," he couldn't open the lid "because the pressure is still inside."[10] The pressure cooker "knows" when the pressure has fully released and will unlock "automatically."

23.     According to the Owner's Manual accompanying each individual unit sold, the pressure cookers purport to have "Built-In Safety Devices," misleading the consumer into believing that the pressure cookers are reasonably safe for their normal, intended use. Said "Safety Devices"[11] include, but are not limited to, the following:

- SAFETY LID LOCK: The Lid tabs connect under the Base tabs to lock the Lid to the Base when fully closed.

- POSITIVE PRESSURE MECHANISM (FLOAT VALVE): When the pressure reaches a required point, the pressure lifts the Float Valve up, contacting the Locking Pin.

- LID POSITIONING SENSOR: A magnetic sensor indicates whether the Lid is fully closed. The Unit will beep and display "LID" when the Lid is not locked or is not required for a preprogrammed setting.

- LID INNER TRAY (GUARD): The Inner Lid prevents food from entering the Upper Lid and entering the Float Valve and Pressure Release Chambers.

- ANTI-BLOCKAGE GUARD: Guards the underside of the Pressure Release Valve.

- TWO-STEP SECURITY RESET FOR QUICK RELEASE: The Steam Release Switch needs to be slid once to release the steam and then let go to open the Lid. If there is steam/pressure coming out of the Pressure Release Valve or your hand is still holding the Steam Release Switch in the Open position, the Lid will not slide to open.

---

[9] https://www.youtube.com/watch?v=UsYE9e4nQLs&feature=youtu.be (last accessed September 7, 2022).
[10] *Id.*
[11] *See* Power Quick Pot Digital Pressure Cooker Model No. Y6D-36 Owner's Manual, pg. 6.

- EXCESS PRESSURE RELEASE SYSTEM: The Pressure Release Valve is weighted, which maintains a pressure level and only allows the Unit to build pressure at a certain level. When the pressure is higher than the weight can handle, the steam is released until the pressure is less than the weight.

- AUTOMATIC TEMPERATURE CONTROL: The temperature is regulated by the programming to maintain a consistent temperature.

- PRESSURE CONTROLLER: The Inner Pot sits on a pressure plate. When there is too much pressure, the plate depresses and turns off the heater, which stops the pressure from increasing.

- ELECTRICAL (CURRENT-TEMP) PROTECTION: There is a temperature sensor on the Base of the Unit. When the temperature rises above the preprogrammed setting, the heater shuts down and then fluctuates to allow the Unit to maintain the correct temperature.

- CYCLE INDICATOR (LCD DISPLAY): The LCD display changes colors and a program countdown is shown.

- ANTI-TAMPER FLOAT VALVE GUARD: A screen on the Lid covers the Float Valve, so it cannot be tampered with.

24.    In addition to the "Built-In Safety Devices" listed in the manual, in Defendant Tristar's "Frequently Asked Questions" YouTube video,[12] Defendant Tristar states that lid of the pressure cookers "should only come off if there [is] no pressure inside.[13]" Specifically:

- "People worry that the lid might come off. It won't." (1:02)

- "The lid on the Power Pressure Cooker XL can only come off if there's no pressure left inside the pot.  And remember, if there is pressure present inside the pot, the lid will stay securely closed so you don't have to worry." (1:02)

- "Once your meal is finished, the unit will depressurize and automatically stop cooking and switch to the Keep Warm mode. There's no safer way to cook." (2:54)

---

[12] https://www.youtube.com/watch?v=kCESkfSSROk (last accessed September 7, 2022).
[13] *Id.*

25.     By reason of the forgoing acts or omissions, the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

26.     The pressure cooker was used for its intended purpose of preparing meals; and was done so in a manner that was reasonable and foreseeable by Defendant Tristar.

27.     However, the aforementioned pressure cooker was defectively designed and manufactured by Defendant Tristar in that it failed to properly function as to prevent the lid from being removed with normal or minimal force while the unit remained pressurized, contrary to the requirements of UL 136, and despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff and similar consumers in danger while using the pressure cookers.

28.     Defendant Tristar's pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

29.     Further, Defendant Tristar's representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

30.     Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

31.     Defendant Tristar knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public. Nevertheless, Defendant Tristar continues to ignore and/or conceal its knowledge of the pressure cookers' defects from the general public and continues to generate a substantial profit from the sale of its pressure cookers,

demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and consumers like her.

32.     As a direct and proximate result of Defendant Tristar's intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous Pressure Cooker, which resulted in significant and painful bodily injuries upon Plaintiff.

33.     Consequently, the Plaintiff in this case seeks damages resulting from Defendant Tristar's pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY

34.     At the time of Plaintiff's injuries, Defendant Tristar's pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

35.     Defendant's pressure cookers were in the same or substantially similar condition as when they left the possession of the Defendant.

36.     Plaintiff nor any other individual misused or materially alter the pressure cooker.

37.     The pressure cookers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

38.     Further, a reasonable person would conclude that the possibility and risk of serious harm outweigh the burden or cost of making the pressure cookers safe. Specifically:

- The pressure cookers designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

- The seriousness of the potential burn injuries resulting from the product drastically outweigh any benefit that could be derived from its normal, intended use;

- Defendant failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

- Defendant failed to warn and place adequate warnings and instructions on the pressure cookers;

- Defendant failed to adequately test the pressure cookers to the relevant industry standards, including UL 136 and UL 1026; and

- Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages.

39.    Defendant's actions and omissions were the direct and proximate cause of Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, as well as punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages when evidence or facts supporting such allegations are discovered.

**COUNT II**
**NEGLIGENCE**

40.    Defendant had a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers.

41.    Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale, and marketing of its

pressure cookers in that Defendant knew or should have known that said pressure cookers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

42.    Defendant was negligent in the design, manufacture, advertising, warning, marketing, and sale of its pressure cookers in that, among other things, it:

- Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;

- Placed an unsafe product into the stream of commerce;

- Aggressively over-promoted and marketed its pressure cookers through television, social media, and other advertising outlets; and

- Was otherwise careless or negligent.

43.    Despite the fact that Defendant knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendant continued to market its pressure cookers to the general public (and continues to do so).

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, as well as punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages when evidence or facts supporting such allegations are discovered.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant for damages, including punitive damages according to proof, to which she is entitled by law, as well as all costs of this action and interest to the full extent of the law, whether arising under the common law and/or statutory law, including:

- judgment for Plaintiff and against Defendant;

- damages to compensate Plaintiff for her injuries, economic losses and pain and suffering sustained as a result of the use of the Defendant's pressure cooker;

-  pre and post judgment interest at the lawful rate;

- a trial by jury on all issues of the case;

- an award of attorneys' fees; and

- for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

**JOHNSON BECKER, PLLC**

Dated: May 22, 2025

*/s/ Lisa A. Gorshe, Esq.*
Lisa A. Gorshe, Esq. (FL #122180)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Tel.: (612) 436-1800
Fax: (612) 436-1801
lgorshe@johnsonbecker.com

***Attorneys for Plaintiff***